UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DIVISION


VINCENT CENTAUR,

               Petitioner,

v.                               Case No. 3:04-cv-150-12HTS

STATE OF FLORIDA, et al.,

               Respondents.

_____

**ORDER**

**I. Status**

Petitioner Vincent Centaur, an inmate of the Florida penal system proceeding *pro se* and *in forma pauperis*, initiated this action by filing a Petition for Writ of Habeas Corpus (Doc. #1) (hereinafter Petition) pursuant to 28 U.S.C. § 2254 on March 1, 2004. Petitioner challenges a 2003 state court (Columbia County, Florida) judgment of conviction for two counts of grand theft on the following grounds: (1) ineffective assistance of trial counsel for counsel's informing Petitioner that law enforcement officers were not backing up his story and advising Petitioner that if he did not take the five-year sentence, the State would recommend a twenty-year sentence; (2) the search and seizure of evidence used to prosecute Petitioner was unconstitutional; and, (3) the conviction was obtained by the unconstitutional failure of the prosecution to disclose favorable evidence to Petitioner.

Respondents filed an Answer in Response to Order to Show Cause (Doc. #20) (hereinafter Response).  They submitted exhibits in support of their Response.[1]  Petitioner was instructed on how to properly respond to a motion to dismiss and/or for summary judgment.  See Court's Order to Show Cause and Notice to Petitioner (Doc. #7).  Petitioner has filed a Reply.  See Petitioner's Response to Respondent[s'] An[sw]er to Show Cause Order (Doc. #29) (hereinafter Petitioner's Reply).  Petitioner submitted exhibits in support of his Reply.  See Petitioner's Index to Exhibits (Doc. #30) (hereinafter Petitioner's Ex.).  This case is now ripe for review.

## II. Procedural History

On February 13, 2003, Petitioner pled guilty to two counts of grand theft and was sentenced to a five-year term of imprisonment. Ex. A; Ex. B, Transcript of the Plea Proceeding (hereinafter Tr.); http://www.dc.state.fl.us/ActiveInmates (website for the Florida Department of Corrections).[2]

On February 14, 2003, Petitioner filed a *pro se* "motion of ineffective counsel," raising the following ineffectiveness grounds:  (1) defense counsel refused to subpoena a Columbia County

---

[1] Respondents' exhibits will be hereinafter referred to as "Ex."

[2] Petitioner Vincent Centaur's current estimated release date, as reflected by the Florida Department of Corrections' website, is November 27, 2006.

2

Sheriff's officer who would show that evidence was being withheld; (2) defense counsel failed to enter testimony that would have bolstered Petitioner's motion to suppress claim; (3) defense counsel told Petitioner that his motion to suppress could have been prepared better, but that he was not going to put any more effort into Petitioner's case; (4) defense counsel told Petitioner that he had two murder cases that required his attention and therefore did not have time to prepare Petitioner's motion to suppress or properly prepare the case for trial; (5) Petitioner's right to a fair and just hearing and/or trial is compromised due to ineffective counsel; (6) defense counsel failed to provide Petitioner with copies of the search warrants after several requests that they be provided; and, (7) there was an improper relationship between defense counsel and the Assistant State Attorney (Christina Johnson). Ex. C. On April 23, 2003, the trial court, finding the motion to be a Fla. R. Crim. P. 3.850 motion, denied the motion. Ex. D. He did not appeal the order.

On February 19, 2003, Petitioner, in a letter, requested to withdraw his plea. Ex. E. On April 23, 2003, the trial court, construing the letter as a motion to withdraw the plea, denied the motion. Ex. F. On May 6, 2004, Petitioner filed a "Motion to Withdraw Plea and Motion to Enter Officer Deposition as Evidence." Ex. G. On May 23, 2004, the trial court, construing the motion as a motion for rehearing of the court's April 23, 2003, denial of his

3

motion to withdraw the plea, affirmed its April 23, 2003, order. Ex. H.

On March 28, 2003, Petitioner filed a Petition for Belated Appeal in the appellate court, stating that he was not able to timely appeal his conviction and sentence of February 13, 2003, because he was being moved to other institutions, was not allowed access to the law library and was not permitted to copy the appeal. Ex. I at 4.  On September 5, 2003, the appellate court denied the petition.  Ex. J (citing Jordan v. State, 549 So.2d 805 (Fla. 1st DCA 1989) ("We do not believe that access to the law library is necessary to prepare and transmit a simple notice of appeal.")). On October 10, 2003, the appellate court denied his motion for rehearing.  Ex. K; Ex. L.

On September 15, 2003, Petitioner filed a Petition for Writ of Habeas Corpus in the appellate court.  Ex. M.  On October 21, 2003, the appellate court per curiam denied the petition.  Ex. N.  On November 24, 2003, the court denied his motion for rehearing and his amended motion for rehearing.  Ex. O; Ex. P; Ex. Q.  On September 16, 2003, Petitioner filed a Petition for Common-Law Certiorari.  Ex. R.  On January 23, 2004, the appellate court per curiam dismissed the petition for writ of certiorari.  Ex. W.  On February 18, 2004, the mandate was issued.  Ex. X.

Petitioner's Petition (signed on February 25, 2004, and filed in this Court on March 1, 2004) is timely filed within the one-year period of limitations.  See 28 U.S.C. § 2244(d); Response at 3-4.

### III. EVIDENTIARY HEARING

This Court has carefully reviewed the record and, for the reasons set forth more fully below, concludes Petitioner is not entitled to an evidentiary hearing.  A habeas corpus petitioner is entitled to an evidentiary hearing in federal court if he alleges facts which, if proven, would entitle him to habeas corpus relief. Smith v. Singletary, 170 F.3d 1051, 1053-54 (11th Cir. 1999) (citation omitted); Cave v. Singletary, 971 F.2d 1513, 1516 (11th Cir. 1992) (citing Townsend v. Sain, 372 U.S. 293 (1963)).  Here, the pertinent facts of the case are fully developed in the record before the Court.  Smith, 170 F.3d at 1054 (stating that a district court does not need to conduct an evidentiary hearing "if it can be conclusively determined from the record that the petitioner was not denied effective assistance of counsel").  No evidentiary proceedings are required in this Court.  High v. Head, 209 F.3d 1257, 1263 (11th Cir. 2000) (citing McCleskey v. Zant, 499 U.S. 467, 494 (1991)), cert. denied, 532 U.S. 909 (2001).  The Court can "adequately assess [Petitioner's] claim[s] without further factual development." Turner v. Crosby, 339 F.3d 1247, 1275 (11th Cir. 2003), cert. denied, 541 U.S. 1034 (2004).  Therefore, for the

5

reasons set forth above, an evidentiary hearing will not be conducted by this Court.

### IV. Ineffective Assistance of Trial Counsel

"The Sixth Amendment guarantees criminal defendants effective assistance of counsel. That right is denied when a defense counsel's performance falls below an objective standard of reasonableness and thereby prejudices the defense." Yarborough v. Gentry, 540 U.S. 1, 5 (2003) (per curiam) (citations omitted). "[H]indsight is discounted by pegging adequacy to 'counsel's perspective at the time' . . . and by giving a 'heavy measure of deference to counsel's judgments.'" Rompilla v. Beard, 125 S.Ct. 2456, 2462 (2005) (citations omitted). If counsel's performance falls "below the line of reasonable practice, there is a further question about prejudice, that is, whether 'there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.'" Id. at 2467 (citation omitted).

The Eleventh Circuit has captured the essence of an ineffectiveness claim:

> [A] petitioner must show that his lawyer's performance fell below an "objective standard of reasonableness" and that the lawyer's deficient performance prejudiced the petitioner. See Strickland v. Washington, 466 U.S. 668, 104 S.Ct. 2052, 2064, 80 L.Ed.2d 674 (1984). Establishing these two elements is not easy: "the cases in which habeas petitioners can properly prevail on the ground of ineffective assistance of counsel are few

6

and far between." <u>Waters v. Thomas</u>, 46 F.3d
1506, 1511 (11th Cir. 1995) (en banc) (quoting
<u>Rogers v. Zant</u>, 13 F.3d 384, 386 (11th Cir.
1994)).

For assessing a lawyer's performance,
<u>Chandler v. United States</u>, 218 F.3d 1305 (11th
Cir. 2000) (en banc) <u>cert</u>. <u>denied</u>, 531 U.S.
1204, 121 S.Ct. 1217, 149 L.Ed.2d 129 (2001),
sets out the basic law: "Courts must indulge
the strong presumption that counsel's
performance was reasonable and that counsel
made all significant decisions in the exercise
of reasonable professional judgment." <u>Id</u>. at
1314 (internal marks omitted). . . . Our role
in reviewing an ineffective assistance claim
is not to "grade" a lawyer's performance;
instead, we determine only whether a lawyer's
performance was within "the wide range of
professionally competent assistance." <u>See</u>
<u>Strickland</u>, 104 S.Ct. at 2066.

The inquiry into whether a lawyer has
provided effective assistance is an objective
one: a petitioner must establish that no
objectively competent lawyer would have taken
the action that his lawyer did take." <u>See</u>
<u>Chandler</u>, 218 F.3d at 1315. . . .

A petitioner's burden of establishing
that his lawyer's deficient performance
prejudiced his case is also high. "It is not
enough for the [petitioner] to show that the
errors had some conceivable effect on the
outcome of the proceeding. Virtually every
act or omission of counsel would meet that
test." <u>Strickland</u>, 104 S.Ct. at 2067.
Instead, a petitioner must establish that a
reasonable probability exists that the outcome
of the case would have been different if his
lawyer had given adequate assistance. <u>See</u> <u>id</u>.
at 2068.

<u>Van Poyck v. Florida Dep't of Corr.</u>, 290 F.3d 1318, 1322-23 (11th

Cir. 2002) (per curiam) (footnotes omitted), <u>cert</u>. <u>denied</u>, 537 U.S.

812 (2002), 537 U.S. 1105 (2003).

In sum, "[w]ithout proof of both deficient performance and prejudice to the defense, . . . it could not be said that the sentence or conviction 'resulted from a breakdown in the adversary process that rendered the result of the proceeding unreliable,' and the sentence or conviction should stand." Bell v. Cone, 535 U.S. 685, 695 (2002) (internal citation omitted) (quoting Strickland v. Washington, 466 U.S. 668, 687 (1984)).

In the context of the plea process, the Supreme Court of the United States stated:

> We hold, therefore, that the two-part Strickland v. Washington test applies to challenges to guilty pleas based on ineffective assistance of counsel. In the context of guilty pleas, the first half of the Strickland v. Washington test is nothing more than a restatement of the standard of attorney competence already set forth in [prior cases]. The second, or "prejudice," requirement, on the other hand, focuses on whether counsel's constitutionally ineffective performance affected the outcome of the plea process. In other words, in order to satisfy the "prejudice" requirement, the defendant must show that there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial.
>
> In many guilty plea cases, the "prejudice" inquiry will closely resemble the inquiry engaged in by courts reviewing ineffective-assistance challenges to convictions obtained through a trial. For example, where the alleged error of counsel is a failure to investigate or discover potentially exculpatory evidence, the determination whether the error "prejudiced" the defendant by causing him to plead guilty rather than go to trial will depend on the

> likelihood that discovery of the evidence
> would have led counsel to change his
> recommendation as to the plea. This
> assessment, in turn, will depend in large part
> on a prediction whether the evidence likely
> would have changed the outcome of a trial.
> Similarly, where the alleged error of counsel
> is a failure to advise the defendant of a
> potential affirmative defense to the crime
> charged, the resolution of the "prejudice"
> inquiry will depend largely on whether the
> affirmative defense likely would have
> succeeded at trial. See, e.g., Evans v.
> Meyer, 742 F.2d 371, 375 (CA7 1984) ("It is
> inconceivable to us . . . that [the defendant]
> would have gone to trial on a defense of
> intoxication, or that if he had done so he
> either would have been acquitted or, if
> convicted, would nevertheless have been given
> a shorter sentence than he actually
> received").

Hill v. Lockhart, 474 U.S. 52, 59 (1985) (footnote omitted).

### V. Findings of Fact and Conclusions of Law

#### A. Ground One

Petitioner claims that trial counsel was ineffective for informing him that the law enforcement officers were not backing up his story and then advising Petitioner that if he did not take the five-year sentence, the State would recommend a twenty-year sentence. Respondents contend that Petitioner has not properly exhausted this claim in that he failed to raise the claim in his Rule 3.850 motion, and this Court agrees. This ground is therefore procedurally barred.

A petition for writ of habeas corpus should not be entertained unless the petitioner has first exhausted his state remedies.

<u>Castille v. Peoples</u>, 489 U.S. 346, 349, <u>reh'g denied</u>, 490 U.S. 1076 (1989); <u>Rose v. Lundy</u>, 455 U.S. 509 (1982).  The courts of Florida must be given an opportunity to consider Petitioner's legal theory of a federal constitutional deficiency and the factual basis for that theory.  <u>Picard v. Connor</u>, 404 U.S. 270, 277 (1971).

> Exhaustion of state remedies requires that the state prisoner "fairly presen[t] federal claims to the state courts in order to give the State the opportunity to pass upon and correct alleged violations of its prisoners' federal rights." <u>Duncan v. Henry</u>, 513 U.S. 364, 365, 115 S.Ct. 887, 888, 130 L.Ed.2d 865 (1995) (citing <u>Picard v. Connor</u>, 404 U.S. 270, 275-76, 92 S.Ct. 509, 512, 30 L.Ed.2d 438 [1971] ) (internal quotation marks omitted).  The Supreme Court has written these words:

>> [T]hat the federal claim must be fairly presented to the state courts . . . . it is not sufficient merely that the federal habeas applicant has been  through the state courts . . . .  Only if the state courts have had the first opportunity to hear the claim sought to be vindicated in a federal habeas proceeding does it make sense to speak of the exhaustion of state remedies.

> <u>Picard</u>, 404 U.S. at 275, 92 S.Ct. at 512.  <u>See also</u> <u>Duncan</u>, 513 U.S. at 365, 115 S.Ct. at 888 ("Respondent did not apprise the state court of his claim that the evidentiary ruling of which he complained was not only a violation of state law, but denied him the due process of law guaranteed by the Fourteenth Amendment.").

> Thus, to exhaust state remedies fully the petitioner must make the state court aware that the claims asserted present federal

> constitutional issues.  "It is not enough that all the facts necessary to support the federal claim were before the state courts or that a somewhat similar state-law claim was made." <u>Anderson v. Harless</u>, 459 U.S. 4, 5-6, 103 S.Ct. 276, 277, 74 L.Ed.2d 3 (1982) (citations omitted).

<u>Snowden v. Singletary</u>, 135 F.3d 732, 735 (11th Cir.), <u>cert</u>. <u>denied</u>, 525 U.S. 963 (1998).

Generally, a federal habeas petition should be dismissed if the petitioner has failed to exhaust state remedies.  <u>Keeney v. Tamayo-Reyes</u>, 504 U.S. 1, 10 (1992).  A federal court need not dismiss to allow for exhaustion of state remedies, however, if such a dismissal would be futile.

> [I]f the petitioner simply never raised a claim in state court, and it is obvious that the unexhausted claim would now be procedurally barred due to a state-law procedural default, the federal court may foreclose the petitioner's filing in state court; the exhaustion requirement and procedural default principles combine to mandate dismissal.

<u>Bailey v. Nagle</u>, 172 F.3d 1299, 1303 (11th Cir. 1999) (per curiam) (citing <u>Snowden</u>, 135 F.3d at 737).

It would be futile for this Court to dismiss this case to give Petitioner the opportunity to present his unexhausted claim to the state courts because second or successive 3.850 motions are subject to dismissal if the court finds that the motion "fails to allege new or different grounds for relief and the prior determination was on the merits" or the court finds that the failure of the movant to

assert new and different grounds in a prior motion constitutes an abuse of procedure. Fla. R. Crim. P. 3.850(f). Furthermore, any 3.850 motion that Petitioner filed at this time would be subject to dismissal as untimely. <u>See</u> Fla. R. Crim. P. 3.850(b). Thus, Petitioner's ground one has been procedurally defaulted. <u>See</u> <u>Bailey</u>, 172 F.3d at 1305.

As outlined by the Eleventh Circuit, "[t]here are only two exceptions to the procedural default rule. First, a petitioner may gain federal review of an otherwise procedurally defaulted claim if he can demonstrate both cause excusing the default and actual prejudice resulting from the bar." <u>Hill v. Jones</u>, 81 F.3d 1015, 1022-23 (11th Cir. 1996) (citations omitted), <u>cert</u>. <u>denied</u>, 519 U.S. 1119 (1997). The Court continued: "[s]econd, in extraordinary cases, a federal habeas court may grant the writ without a showing of cause and prejudice to correct a fundamental miscarriage of justice." <u>Id</u>. at 1023 (citation omitted).

> For [a petitioner] to show cause, the procedural default "must result from some objective factor external to the defense that prevented [him] from raising the claim and which cannot be fairly attributable to his own conduct." <u>McCoy v. Newsome</u>, 953 F.2d 1252, 1258 (11th Cir. 1992) (quoting <u>Carrier</u>, 477 U.S. at 488, 106 S.Ct. 2639). Under the prejudice prong, [a petitioner] must show that "the errors at trial actually and substantially disadvantaged his defense so that he was denied fundamental fairness." <u>Id</u>. at 1261 (quoting <u>Carrier</u>, 477 U.S. at 494, 106 S.Ct. 2639).

Wright v. Hopper, 169 F.3d 695, 706 (11th Cir.), cert. denied, 528 U.S. 934 (1999).

Petitioner has not shown cause and prejudice or that a fundamental miscarriage of justice will result if his federal constitutional claim is not addressed on the merits.  The fundamental miscarriage of justice exception "requires a colorable showing of actual innocence, which [Petitioner] has not made." Bailey, 172 F.3d at 1306 (citing Schlup v. Delo, 513 U.S. 298, 324-27 (1995)).  Thus, the Court need not review the merits of Petitioner's ground one.

Even assuming that Petitioner Centaur sufficiently exhausted ground one, the claim is without merit.  In evaluating the performance prong of the Strickland ineffectiveness inquiry, there is a strong presumption in favor of competence.  Thus, Petitioner must establish that no competent attorney would have taken the action that counsel, here, chose.  United States v. Freixas, 332 F.3d 1314, 1319-20 (11th Cir. 2003) (citations omitted).  Given defense counsel's actions based on the record before this Court, defense counsel's performance was not deficient.  His advice to Petitioner was not improper.

Even assuming arguendo deficient performance by defense counsel, Petitioner has not shown prejudice.  Petitioner has not shown that counsel's errors actually had an adverse effect on the defense.  Here, Petitioner has not shown that a reasonable

probability exists that the outcome of the case would have been different if his lawyer had given the assistance that Petitioner has alleged he should have provided.

At the plea proceeding, defense counsel pointed out that Petitioner Centaur had sixteen felony convictions. Tr. at 14; Ex. A, Criminal Punishment Code Scoresheet. Specifically, he outlined his attempts to persuade the prosecutor to recommend a lighter sentence for Petitioner Centaur.

> Yes, I have a signed plea form by Mr. Centaur that I received from Ms. Johnson [the prosecutor] yesterday with some modification of a prior plea offer. There is now no probation to follow.
>
> I had tried to get Mr. Centaur a plea of thirteen months -- and might as well deal with this, it will only take another minute. He scores out to slightly more than thirteen months. He has no violent felonies and he doesn't get too many points on the score sheet, even though he has sixteen felonies. I tried -- and the Court can inquire of Ms. Johnson to verify if I did these things. I tried to get Ms. Johnson to give me thirteen months. My close personal relationship with her was unsuccessful in convincing her to give me thirteen months.[3]
>
> I asked for three years prison, denied. Four years prison, denied. Five years prison as not an HFO, denied. I was able to finally

---

[3] Since Petitioner previously accused defense counsel of a personal relationship with the prosecutor (Tr. at 6), defense counsel sarcastically notes that the alleged personal relationship did not assist him in the plea negotiations. Tr. at 18; see Ex. D, Order Denying Motion of Ineffective Counsel, filed April 23, 2003, at 2 (citing Tr. at 8).

get her to back off of two years probation to
follow.[4]

So the plea offer now is five years state
prison, credit time served since July 19th,
2002.  He will admit and stipulate that he
qualifies as a habitual felony offender and
should be sentenced as such.  And that is he
has signed that plea form today in this room
in front of seven people.

. . . .

He will for [sic] forfeit all property
that was seized, twenty-five page inventory of
property that was seized by the Columbia
County Sheriff's Office.  No contact with the
victims. $500 Public Defender fee and $400
court cost converted to civil liens.  This is
a guilty plea.  And he signed this form in
this room in the presence of the clerk,
prosecutor, probation, a deputy bailiff,
myself, the court reporter and Your Honor.

Id. at 18-19.

The prosecutor clarified that Petitioner Centaur could have

been sentenced up to twenty years (ten years for each grand theft)

as a habitual felony offender.[5]  Id. at 26.  She verified, for the

record, defense counsel's efforts to persuade the State to offer a

lighter sentence for Petitioner Centaur.  Id. at 27.

---

[4] On January 21, 2003, defense counsel notified Petitioner
that the State had offered a plea of five years of prison followed
by two years of probation.  Petitioner's Ex. D, Letter to
Petitioner Centaur from Gregory T. Brown, Assistant Public
Defender, dated January 21, 2003, at 2.

[5] Defense counsel had also notified Petitioner "that dozens of
items were retrieved from your property which could lead to
additional charges including dealing in stolen property which is a
second degree felony punishable by 15 years in prison."
Petitioner's Ex. D at 2.

> Since the minute that Mr. Brown became appointed on this case, he has, in my opinion, been very diligent in not only trying to get the discovery from Mr. Groland, which apparently he couldn't do, so he ended up requesting it from me and I immediately provided it to him. He did attempt on numerous occasions to negotiate a plea sentence with me starting out, as he said, with thirteen months and then it went to three years and then it went to four years. Then it went to you would not agree he would be a habitual felony offender. And, you know, I stuck with my plea of five years as an HFO. Mr. Brown did work on not having probation to follow.
>
> But, you know, he did what, in my opinion, what he was suppose to. Having worked as a private defense attorney for several years, you know, he did diligently attempted [sic] to do what was in the best interest of Mr. Centaur. However, the State felt that our sentence was more than fair.

Id. When the trial judge inquired as to whether Petitioner wished to respond, Petitioner declined. Id. at 27-28.

Petitioner affirmed that he had signed the plea form freely and voluntarily. Id. at 19. He agreed that he was not forced or threatened in any way to enter the guilty plea. Id. Petitioner further conceded that he was satisfied with his defense attorney. Id. at 22. The trial judge accepted the plea as freely given and voluntarily, knowingly and intelligently entered. Id. at 24-25. The trial judge sentenced Petitioner to five years of imprisonment in the Florida Department of Corrections as a habitual felony offender. Id. at 25. If Petitioner had declined the plea offer and had gone to trial and been found guilty, he faced a twenty-year

16

sentence.      Based   on   the   record   before   this   Court,   this
ineffectiveness claim is without merit.

### B. Ground Two

Petitioner claims that the search and seizure of evidence used
to prosecute Petitioner was unconstitutional.   Petitioner claims
that he raised this claim in his state petition for writ of habeas
corpus, and Respondents agree.   Petition at 7; Response at 10.
Therefore, this Court concludes that Petitioner has sufficiently
exhausted the claim.  Ex. M; Ex. N.

Respondents contend that this ground is barred by Stone v.
Powell, 428 U.S. 465 (1976), and this Court agrees.  See Response
at 11-12.  Under the principles of Stone v. Powell, federal habeas
review of Petitioner's illegal search and seizure claim is not
cognizable in this proceeding because Petitioner had a full and
fair opportunity to litigate his Fourth Amendment issue in state
court.

> [W]hen "the State has provided an opportunity
> for full and fair litigation of a Fourth
> Amendment claim, a state prisoner may not be
> granted federal habeas corpus relief on the
> ground that evidence obtained in an
> unconstitutional search and seizure was
> introduced at his trial."  Stone v. Powell,
> 428 U.S. 465, 494, 96 S.Ct. 3037, 3052, 49
> L.Ed.2d 1067 (1976) (footnotes omitted).
> Thus, before [this Court] may review the
> merits of [Petitioner's] Fourth Amendment
> claim, [he] must demonstrate that the state
> courts deprived him of a full and fair
> opportunity to litigate the claim.

> In Tukes v. Dugger, 911 F.2d 508, 513-14
> (11th Cir. 1990), [the Eleventh Circuit Court
> of Appeals] said this in applying Stone: "For
> a claim to be fully and fairly considered by
> the state courts, where there are facts in
> dispute, full and fair consideration requires
> consideration by the fact-finding court, and
> at least the availability of meaningful
> appellate review by a higher state court."

Peoples v. Campbell, 377 F.3d 1208, 1224 (11th Cir. 2004), cert.

denied, 125 S.Ct. 2963 (2005).  The Eleventh Circuit has "construed

Stone v. Powell to bar consideration of a Fourth Amendment claim if

the state has provided an opportunity for full and fair litigation

of the claim 'whether or not the defendant employs those

processes.'"  Huynh v. King, 95 F.3d 1052, 1058 (11th Cir. 1996)

(citing Caver v. Alabama, 577 F.2d 1188, 1192 (5th Cir. 1978))

(footnote omitted).

The illegal search and seizure claim was raised in a pretrial

motion to suppress (Ex. I, attached Exhibit E, Motion to Suppress;

Tr. at 11, 14, 17-18), and the court scheduled the suppression

hearing.  Petitioner's Ex. D at 1.  On January 21, 2003, defense

counsel informed Petitioner that the prosecutor had stated that if

Petitioner proceeds forward to the suppression hearing, then the

State's plea offer[6] would be withdrawn.  Id.  At reflected by the

record, Petitioner Centaur chose to enter a plea rather than

---

[6] At that time, the State's plea offer was for five years of
imprisonment with two years of probation to follow; however,
defense counsel was successful in eliminating the two years of
probation.  Tr. at 18.

proceed to the suppression hearing that had been scheduled by the trial judge.

Thus, the record reflects that Petitioner had a full and fair opportunity to argue his Fourth Amendment claim in state court. In addition, the illegal search and seizure claim was raised in his Petition for a Belated Appeal before the appellate court and then again in his state petition for writ of habeas corpus before the appellate court. In sum, Petitioner was afforded every full and fair opportunity to litigate and have adjudicated his Fourth Amendment claim; therefore, under Stone v. Powell, he should not be permitted to further litigate the claim in this Court. Thus, this ground is barred.

And, even assuming that this claim is not barred by Stone v. Powell, there are limitations as to what Petitioner can challenge in a habeas petition before this Court since he pled guilty to grand theft. "When a defendant pleads guilty he or she, of course, forgoes not only a fair trial, but also other accompanying constitutional guarantees." United States v. Ruiz, 536 U.S. 622, 628-29 (2002) (citing Boykin v. Alabama, 395 U.S. 238, 243 (1969)). In Tollett v. Henderson, 411 U.S. 258, 267 (1973), the United States Supreme Court:

> reaffirm[ed] the principle recognized in the
> <u>Brady</u> trilogy[7]: a guilty plea represents a
> break in the chain of events which has
> preceded it in the criminal process.  When a
> criminal defendant has solemnly admitted in
> open court that he is in fact guilty of the
> offense with which he is charged, he may not
> thereafter raise independent claims relating
> to the deprivation of constitutional rights
> that occurred prior to the entry of the guilty
> plea.  He may only attack the voluntary and
> intelligent character of the guilty plea by
> showing that the advice he received from
> counsel was not within the standards set forth
> in <u>McMann [v. Richardson</u>, 397 U.S. 759
> (1970)].

The Eleventh Circuit Court of Appeals has noted that:

> The Supreme Court has given finality to
> guilty pleas by precluding claims of
> constitutional deprivations occurring prior to
> entry of the plea.  <u>Tollett v. Henderson</u>, 411
> U.S. 258, 267, 93 S.Ct. 1602, 1608, 36 L.Ed.2d
> 235 (1973); <u>see</u> <u>Tiemens v. United States</u>, 724
> F.2d 928, 929 (11th Cir.) (per curiam) ("[A]
> guilty plea waives all nonjurisdictional
> defects occurring prior to the time of the
> plea, including violations of the defendant's
> rights to a speedy trial and due process."),
> <u>cert</u>. <u>denied</u>, 469 U.S. 837, 105 S.Ct. 134, 83
> L.Ed.2d 74 (1984).

<u>Stano v. Dugger</u>, 921 F.2d 1125, 1150 (11th Cir.), <u>cert</u>. <u>denied</u>, 502
U.S. 835 (1991) (footnote omitted).  Petitioner Centaur's illegal
search and seizure claim is non-jurisdictional.  Thus, the claim
was waived when he pled guilty to grand theft.

---

[7] The <u>Brady</u> trilogy of cases consists of: <u>Brady v. United
States</u>, 397 U.S. 742 (1970); <u>McMann v. Richardson</u>, 397 U.S. 759
(1970); and, <u>Parker v. North Carolina</u>, 397 U.S. 790 (1970).

### C. Ground Three

Petitioner claims that the conviction was obtained by the unconstitutional failure of the prosecution to disclose favorable evidence to Petitioner.   Specifically, he contends that the prosecutor would not release the names of the inmate trustees who were used by the Sheriff's Office to search Petitioner's home and property.   Petitioner notes that he and his counsel requested the inmates' names several times.   Petitioner sufficiently exhausted this claim in his state petition for writ of habeas corpus. Response at 10; Ex. M; Ex. N.

At the plea proceeding, prior to the court's acceptance of the plea, the prosecutor addressed the issue regarding the State's disclosure of the inmate trustees' names.

> As to the names of the trusties [sic] and/or inmates from the Columbia County Jail who participated in the search, I spoke with Katina Werner yesterday, she's going to provide me with the names of the three trusties [sic] that were involved.  The jail nor the officers took down the names of the other trusties [sic].  So what will have to happen is the three inmates who, in fact, did participate in the searches, whose names we know, will be disclosed by name and address. Mr. Brown is welcome to depose them and to ask them who else was involved because I don't know.  That's the most I can give him as far as that Motion to Compel.

Tr. at 5.  Defense counsel responded:

> First of all, I thank the State for responding to the Motion to Compel.  Everything that I had asked for has now been responded to.

> If we go forward with this plea, I won't
> need the State to follow up with the names of
> these people.  But in the abundance of caution
> probably it's a good idea in case Mr. Centaur
> wants to file some kind of bar complaint
> against me when he goes to prison or something
> of that nature, because he did that to his
> prior attorney and then we were reappointed.

Id. at 6.

The trial judge, at the plea proceeding, questioned Petitioner about his claim that the State was withholding evidence, and Petitioner concluded that the State was not withholding evidence. Id. at 9-10.  The prosecutor concluded that, for defense counsel's protection and for the completion of the case file, she would disclose the three names of the inmate trustees "once they are provided to [her] . . . ." Id. at 10-11.

Thus, at the time Petitioner entered the guilty plea, he conceded that the State was not withholding evidence. Id. at 9-10. Petitioner affirmed that he had signed the plea form freely and voluntarily and agreed that he was not forced or threatened in any way to enter the guilty plea.  Id. at 19.  Petitioner confirmed that he was satisfied with his defense attorney.  Id. at 22.  The trial judge accepted the plea as freely given and voluntarily, knowingly and intelligently entered and sentenced Petitioner to five years of imprisonment in the Florida Department of Corrections as a habitual felony offender.  Id. at 24-25.

Respondents, here, contend that once a plea of guilty has been entered, non-jurisdictional challenges to the conviction's

constitutionality are waived, and only an attack on the voluntary and knowing nature of the guilty plea can be sustained.   <u>See</u> Response at 13.   This Court agrees.

Since Petitioner pled guilty to grand theft, there are limitations as to what he can challenge in a habeas petition before this Court.   <u>See</u> Section V.B., Discussion of Ground Two.   As noted by Respondents, Petitioner Centaur's claim that the conviction was obtained by the unconstitutional failure of the prosecution to disclose favorable evidence to Petitioner is non-jurisdictional. Thus, the claim was waived when he pled guilty to grand theft.   <u>See</u> Response at 13.

## VI. Conclusion

Any other claims not specifically addressed are found to be without merit.   Accordingly, for all of the above-stated reasons, the Petition will be denied and this case will be dismissed with prejudice.

Therefore, it is now

**ORDERED AND ADJUDGED:**

1.    The Petition (Doc. #1) is **DENIED**, and this action is **DISMISSED WITH PREJUDICE.**

2.    The Clerk of the Court shall enter judgment denying the Petition and dismissing this case with prejudice.

3.    The Clerk of the Court shall close this case.

**DONE AND ORDERED** at Jacksonville, Florida, this    19th    day of April, 2006.

*Howell W. Melton*
HOWELL W. MELTON
United States District Judge

sc 4/12
c:
Vincent Centaur
Ass't Attorney General (Holland)